UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Craig Thomas Bates,

Plaintiff,

vs.

ORDER
and
REPORT AND RECOMMENDATION

M.L. Turner, R.T. O'Dell,
T. Rice, and P. O'Malley,

Defendants.

Civ. No. 00-2324 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 19th day of June, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Dismiss the Plaintiff's Complaint, which is premised upon Title 42 U.S.C. §1983 or, in the alternative, for Summary Judgment, and upon the Plaintiff's Cross-Motion for Summary Judgment. The Plaintiff's Complaint alleges that the Defendants have violated his rights, under the First, Fifth, and Fourteenth Amendments of the United States Constitution, by placing him in administrative segregation, after he filed a group grievance to protest the phone charges that were being levied by the Prairie

FILED JUN 19 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Correctional Facility in Appleton, Minnesota. The Plaintiff has appeared pro se, and the Defendants have appeared by John W. Riches II, Esq.

For the reasons which follow, we recommend that the Plaintiff's Motion for Summary Judgment be denied, and that the Defendants' Motion to Dismiss, or for Summary Judgment, be granted.[1]

## II. Factual and Procedural History

The Plaintiff identifies himself as an inmate at the Prairie Minnesota Correctional Facility, in Appleton, Minnesota ("PCF-Appleton"). According to his Complaint, PCF-Appleton, through its staff, violated the Plaintiff's constitutional rights to free

[1]In addition to his Motion for Summary Judgment, the Plaintiff has filed two other Motions, both of which request that the filing fees paid toward another action, that was previously dismissed, be applied to this case. See, Docket Nos. 11, 25. According to the Plaintiff, because his first action was voluntarily dismissed, the filing fees paid in order to proceed with that action are "rightfully his" and, therefore, should be counted as partial satisfaction of the filing fee for this action. We disagree. The Prison Litigation Reform Act ("PLRA") of 1995, Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (1996), has altered the method by which Courts are to process the filing fees of prisoners. The revised version of Title 28 U.S.C. §1915(b) provides that, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the **full amount** of a filing fee." [Emphasis added]. As such, there is no reason to accede to the Plaintiff's requests for redistribution of his previously paid filing fees. While we encourage the voluntary dismissal of actions which have no merit, we do not remit the filing fees for other litigants who undertake such dismissals, and the Plaintiff advances no compelling basis to do so here.

speech, and to due process, when it placed him in administrative segregation for 30.5 hours, following his submission of a group grievance. The Plaintiff seeks injunctive relief, which would require the Defendants to allow inmates at PCF-Appleton to file group grievances, as well as compensatory and punitive damages.

According to the Plaintiff, on July 16, 2000, while using the inmate telephone system at PCF-Appleton, he discovered that he was being charged $4.70 for the first minute of his long-distance calls, and $0.45 for each additional minute. See, Complaint, at 4. As such, the Plaintiff decided to file a grievance on behalf of himself, and similarly situated inmates, and employed the PCF-Appleton grievance procedure for that purpose. Apparently, the Plaintiff intended to file a class-action Complaint, so as to protest those phone charges, in the event that his grievance was not successful. As a part of his grievance, the Plaintiff obtained the signatures of all who were affected by the phone charges, and attached the signatures to the grievance, which he then submitted to a social worker at PCF-Appleton, on August 16, 2000.

As alleged by the Plaintiff, several hours after his grievance was filed, he was escorted to the segregation unit of PCF-Appleton by prison staff. Subsequently, he was informed by the Defendant P. O'Malley that he was placed in segregation as punishment for filing

a group grievance.[2] The Plaintiff's Section 1983 claim is premised upon the allegedly retaliatory and, therefore, unlawful placement of the Plaintiff, in segregation, for filing a group grievance. According to the Plaintiff, he was unaware, prior to the time that he filed his grievance, that group grievances were not allowed, because the Defendant had, allegedly, failed to provide notice that group grievances were prohibited. In addition, the Plaintiff alleges that he was treated unfavorably, compared to other prisoners, who had also filed group grievances. In this respect, the Plaintiff contends that he was the victim of unlawful discrimination. Finally, the Plaintiff alleges that the Defendants actions were intended to "chill" the exercise of his constitutional right to grieve adverse prison conditions. As a result, the Plaintiff seeks declaratory, injunctive, and compensatory relief.

We are unable to accept the Plaintiff's arguments and, finding no genuine issue of material fact, we conclude that the Defendants are entitled to Judgment as a matter of law. Accordingly, we recommend that Summary Judgment be granted in the Defendants' favor.

---

[2]As outlined by the Defendants, PCF-Appleton Policy 14-102.5.C.1 prohibits group grievances, by allowing inmates to pursue only those grievances that affect them personally. See, Affidavit of P. O'Malley, at ¶5.

III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. Krentz v. Robertson, 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining

that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

Applying these standards, we now consider whether the Plaintiff has established a claim that raises any triable issues.

B. Legal Analysis.

1. The Plaintiff's Claim that BOP Officials Failed to Provide Him with Notice of Proscribed Conduct.

According to the Plaintiff, his due process rights were violated when the Defendants failed to provide notice that group petitions were prohibited, prior to punishing him for his act of filing a group petition.

a. Standard of Review. The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property, without due process of law. While it is true that the constitutional protections, that are encompassed by the due process clause, do not abate at the time of imprisonment, Hudson v. Palmer, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 125 (1977), quoting, in turn, Price v. Johnston, 334 U.S. 266, 285 (1948).

"It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed." Williams v.

Nix, 1 F.3d 712, 716 (8th Cir. 1993), citing Coffman v. Trickey, 884 F.2d 1057, 1060 (8th Cir. 1989), cert. denied, 494 U.S. 1056 (1990); Brouie v. City of Columbia, 378 U.S. 347, 350-51 (1964). This principle applies within the prison setting. See, Coffman v. Trickey, supra at 1060, citing Gibbs v. King, 779 F.2d 1040, 1044 (5th Cir. 1986), cert. denied, 476 U.S. 1117 (1986)(An inmate is entitled to prior notice, or fair warning, of proscribed conduct before a sanction may be imposed); see also, Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996)("It is clearly established, both by common sense and precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed").

"Consequently, in order to comply with the dictates of the Due Process Clause, a prison regulation must provide fair notice of what is prohibited before a sanction can be imposed." Murphy v. Shaw, 195 F.3d 1121, 1128 (9th Cir. 1999)(citations omitted). As the Supreme Court stated, in Grayned v. City of Rockford, 408 U.S. 104, 108 (1972), "because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."

b. Legal Analysis. Here, the Plaintiff claims that he was entitled to prior notice that his conduct was proscribed, before the Defendant could lawfully impose the sanction of

a 30.5 hour placement in administrative segregation. While we agree that notice of proscribed conduct needs to be provided to prisoners before severe sanctions can be imposed, in the present case, the sanction assessed to the Plaintiff for his behavior does not constitute an atypical, and significant hardship, as is required to implicate the Plaintiff's right to due process.

As the Supreme Court has explained, recognized prisoner due process liberty interests are constrained to those incidents which, "while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force * * *, nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra at 486. Therefore, while some prison deprivations do serve to create liberty interests, they are confined to those instances "which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), citing Sandin v. Conner, supra at 482-84.

Under this analytical framework, it is now well-settled that an inmate's brief placement in a form of institutional segregation does not constitute the sort of "atypical or significant hardship" which gives rise to a prisoner liberty interest. See, e.g., Sandin

v. Conner, supra at 486 (thirty days of disciplinary segregation); Freitas v. Ault, 109 F.3d 1335, 1337 (8th Cir. 1997)(ten days of administrative detention followed by thirty days of "on-call" status); Kennedy v. Blankenship, 100 F.3d 640, 642-43 (8th Cir. 1996)(thirty days of "punitive isolation"); Wycoff v. Nichols, 94 F.3d 1187, 1188 (8th Cir. 1996)(ten days of disciplinary detention and one hundred days in maximum security cell); Moorman v. Thalacker, supra at 971 (fifteen days of highest-level disciplinary detention, followed by one-hundred-and-seven days of less restrictive detention).

Here, the sole sanction of which the Plaintiff complains involves his placement in administrative segregation for 30.5 hours. We conclude that such a sanction does not constitute an "atypical and significant hardship," when compared to the circumstances of ordinary prison life. Cf., Hemphill v. Delo, 124 F.3d 208, 1997 WL 581079 (8th Cir. September 22, 1997)(four days in housing unit, 30 days in disciplinary segregation, and 290 days in administrative segregation, without more, do not implicate a liberty interest). Thus, the Plaintiff's due process rights have not been implicated by the Defendants' disciplinary conduct and, therefore, we recommend that Summary Judgment be granted to the Defendants on this claim.

2. The Plaintiff's Claim that BOP Officials Retaliated Against Him for Exercising his Constitutional Rights, by Filing a Prison Grievance.

According to the Plaintiff, the primary motivation for his disciplinary placement in administrative segregation was the desire of prison staff to retaliate against him for filing a group petition. As such, the Plaintiff has alleged that his placement in administrative segregation was punishment for the valid exercise of his First Amendment rights.

a. Standard of Review. Here, the Defendants placed the Plaintiff in administrative segregation, as punishment for violating a reasonable prison Regulation and, therefore, his claims for retaliation must fail.

Of course, a prisoner may not be disciplined in retaliation for his exercise of a constitutional right. See, Sisneros v. Nix, 95 F.3d 749, 751 (8th Cir. 1996); Cornell v. Woods, 69 F.3d 1383, 1387-88 (8th Cir. 1995); Goff v. Burton, 7 F.3d 734, 736-37 (8th Cir. 1994), cert. denied, 512 U.S. 1209 (1994); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991). Nevertheless, to successfully prosecute a retaliation claim, the prisoner must "'face a substantial burden in attempting to prove that the actual motivating factor for [the discipline]' was the impermissible retaliation." Goff v. Burton, supra at 737, quoting Murphy v. Missouri Dep't. of Correction, 769 F.2d 502, 503 n. 1 (8th Cir. 1985); see also, Sisneros

v. Nix, supra at 752. This standard has been characterized as a "but for" test, Sisneros v. Nix, supra; Goff v. Burton, supra at 737; Ponchik v. Bogan, supra at 420, and the burden placed upon the prisoner, by this standard, is a heavy one. Thus, "[t]o prevail on his retaliation claim, [the prisoner] has the concededly heavy burden of showing that the prison officials who disciplined him had an impermissible motive for doing so, and that but for this impermissible motive, the disciplinary charges would not have been brought." Orebaugh v. Caspari, 910 F.2d 526, 529 (8th Cir. 1990) (Heaney, J., concurring and dissenting).

b. Legal Analysis. Here, upon the Record presented, we find that the Plaintiff has failed to demonstrate that the Defendants had an impermissible motive for placing him in administrative segregation. Rather, the Record amply substantiates that the Plaintiff's transfer was an appropriate exercise of institutional discipline.

It is well-established that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Thornburgh v. Abbott, 490 U.S. 401, 407 (1988), quoting Turner v. Safley, 482 U.S. 78, 84 (1987); see also, Procunier v. Martinez, 416 U.S. 396, 422 (1974) (Marshall, J., concurring). Nevertheless, the constitutional rights of prisoners and others "must be exercised with due regard for the 'inordinately difficult

undertaking' that is modern prison administration." Thornburgh v. Abbott, supra at 407. Thus, to the extent that prisoners have First Amendment rights, "they have only those rights that are consistent with prison discipline." Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986); see also, Bell v. Wolfish, 441 U.S. 520, 544 (1979); Jones v. North Carolina Prisoners' Labor Union Inc., 433 U.S. 119, 129 (1977); Pell v. Procunier, 417 U.S. 817, 822 (1974); Goff v. Dailey, 991 F.2d 1437, 1439 (8th Cir. 1993).

In Turner v. Safely, supra, the United States Supreme Court established the following standard of review for prisoners' constitutional claims:

> [W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.

Turner v. Safely, supra at 89.

As Turner instructs, the reasonableness of a Regulation is dependent upon the following four factors:

> 1. Whether a "valid, rational connection" extends between the prison Regulation and the legitimate governmental interest put forward to justify it;
>
> 2. Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. The impact an accommodation of the asserted constitutional right will have on guards and other inmates, and upon the allocation of prison resources generally; and

> 4. The fact that the absence of ready alternatives will evidence the reasonableness of a prison Regulation.

Id. at 89-90.

Necessarily, the standard of scrutiny is "relaxed" in order to permit "prison administrators * * * and not the Courts, to make the difficult judgments concerning institutional operations." Id. at 89, quoting Jones v. North Carolina Prisoners' Union, supra at 128.

Here, an analysis of the Turner factors reveals that PCF-Appleton's Regulation proscribing group prisoner grievances is valid institutional measure. As noted by the Defendants, the "purpose in prohibiting prisoners from submitting group grievances is to avoid potential facility disruption from inmate unrest and tension created by large groups of inmates dissatisfied with their conditions of confinement." Affidavit of P. O'Malley, at ¶12. In addition, group grievances are prohibited because they are "a ready source of disseminating inaccurate information among the inmate population, which further threatens the safety, security, discipline, stability, and good order of the facility." Id. at ¶13. As the Supreme Court has stated, "regulations * * * expressly aimed at protecting prison security, [are] central to all other corrections goals." Thornburgh v. Abbott, supra at 415, quoting Pell v. Procunier, supra at 823. As such, we regard the Defendants' stated justifications for prohibiting group grievances to be entirely con-

sistent with recognized and legitimate penological interests of PCF-Appleton.

Beyond being legitimate, PCF-Appleton's restraint of group grievances is also neutral in its prohibitions, since it furthers "an important or substantial governmental interest [that is] unrelated to the suppression of expression." Thornburgh v. Abbott, supra at 415, quoting Procunier v. Martinez, supra at 413. Here, the Plaintiff makes no assertion, and we find no basis in the Record upon which to conclude, that PCF-Appleton's group grievance restriction operates, either on its face or through its application, to suppress the content of expression. Notably, the Plaintiff was not disciplined for the subject he grieved but, rather, for his attempt to represent a class of inmates. The Plaintiff does not complain, nor can he, that he was prohibited from filing a grievance, on his own behalf, which challenged the rates for prisoner telephone calls. Therefore, being both legitimate and neutral, PCF-Appleton's group grievance restriction satisfies the first Turner factor.

We are also convinced that the Plaintiff had available, alternative means of grieving prison phone charges without attempting to formulate a class complaint. As the Defendants correctly point out, the Plaintiff could have expressed his disagreement with the prison phone charges by filing an individual grievance. Notably,

the relief that the Plaintiff would obtain from an individual grievance would have an impact upon all similarly situated inmates so, in our view, no pressing legal interest was advanced by the Plaintiff's effort to organize a concerted challenge to the prison conditions in dispute. Since reasonable alternatives were available to the Plaintiff, the second Turner factor has also been satisfied.

In evaluating the third Turner factor, we are satisfied that the prison environment is not conducive to the formulation of group prisoner grievances. As noted by the Defendants, group grievances are likely to create inmate tension and unrest. Also, group grievances facilitate the distribution of inaccurate information among the inmate population. By restricting group grievances, prison officials are reducing the risk of inmate unrest, such as that associated with inmates collectively protesting prison conditions. Accordingly, this Regulation is specifically designed to protect prison personnel, who are likely to be the targets of group prisoner unrest. We defer to the understandable concern of prison officials to control the excesses of contentious conduct before dissension turns to revolt. Finding no basis to compel prison officials to exalt an accommodation for a potentially volatile group protest over the maintenance of prison security, we conclude

that the third Turner factor also favors PCF-Appleton's restriction of group grievances.

The final Turner factor guards against the "exaggerated response" that prison officials might voice to legitimate prison concerns. As the Turner Court explained:

> This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimants constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimus cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

Turner v. Safely, supra at 90-91 [citation omitted].

Here, the Plaintiff has proposed no alternative means of accomplishing the purposes of PCF-Appleton's prohibition on group grievances, but in a less obtrusive way. Further, we are satisfied that this Regulation is not an overreaction or an hysteric response. As we have noted, the Regulation does not stifle a legitimate complaint, but merely impacts the mode that such a complaint can assume. We see little substantive difference between the proscriptions of this Regulation, and one that requires that prisoner grievances be routed through the proper administrative channels, as opposed to being posted, willy-nilly, upon a prison wall.

Accordingly, we conclude that the Plaintiff was not improperly retaliated against for exercising his First Amendment rights when he was disciplined for having filed a group grievance,[3] and the Defendants are entitled to Summary Judgment on this aspect of the Plaintiff's Complaint.

3. The Plaintiff's Equal Protection Claim.

According to the Plaintiff, the Defendants treated him differently from other prisoners, when they punished him for filing a group grievance, and that such disparate treatment vio-

---

[3]The Plaintiff also claims that, by punishing him for filing a group grievance, the Defendants created an unconstitutional "chilling effect" over the right to grieve prison conditions. However, notwithstanding the Plaintiff's assertion, that the Defendants' actions somehow chilled the exercise of his First Amendment rights, there is no showing, let alone a competent suggestion, that any such intimidation was inflicted. See, Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998)(chilling effect present when adverse action would cause people of ordinary firmness from engaging in constitutionally protected activity); see also, Charvat v. Eastern Ohio Regional Wastewater Authority, 246 F.3d 607, 616 (6th Cir. 2001). In fact, the Plaintiff's own actions seem to belie his "chilling effect" claim, as he has protested his placement in administrative segregation on seven separate occasions. See, Complaint; Appendix, at 6, 21, 22, 25-27. More importantly, the Regulation does not prohibit the grieving of telephone charges -- which was the Plaintiff's intent here, but merely the filing of a grievance on behalf of someone other than the Plaintiff. Since there is no evidence in the Record to support this claim, we recommend that the Defendant's Motion for Summary Judgment be granted, in this respect. See, Conwed Corp. v. Employers Reinsurance Corp., 816 F. Supp. 1355 (D. Minn. 1993)(on Motion for Summary Judgment, non-moving party may not rest upon mere allegations in pleadings, but must set forth specific facts sufficient to raise genuine issue for trial).

lates the Equal Protection Clause of the Fifth Amendment. Simply put, the equal protection clause mandates that all persons, who are similarly situated, should be treated alike. See, City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); More v. Farrier, 984 F.2d 269 (8th Cir. 1993). The guarantee of equal protection is not a source of substantive rights or liberties but, rather, is a right to be free from invidious discrimination in statutory classifications and other Government entitlements. Harris v. McRae, 448 U.S. 297, 322 (1980), reh'g. denied, 448 U.S. 917 (1980). An action claiming a violation of this right must show on its face that some element of intentional or purposeful discrimination accompanied the unequal treatment. See, Snowden v. Hughes, 321 U.S. 1, 8 (1944). The discriminatory purpose essential to an equal protection claim implies more than intent or volition; rather, it implies that the violator selected or reaffirmed a particular course of action at least in part because of -- not merely in spite of -- its adverse effects upon an identifiable group. Mc Cleskey v. Kemp, 481 U.S. 279, 298 (1987).

In Divers v. Department of Corrections, 921 F.2d 191 (8th Cir. 1990), our Court of Appeals held that principles of equal protection might be violated if a prisoner received treatment that was "invidiously dissimilar" to that received by other, similarly situated inmates. Id. at 193; see also, Wishon v. Gammon, 978 F.2d

446, 450 (8th Cir. 1992); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987). However, any apparent infringement of the Plaintiff's equal protection rights, which is brought about by means of prison Regulations or policies, must be judged by a deferential standard, i.e., whether the policies are reasonably related to legitimate penological interests. Turner v. Safely, supra. Here, we have already expressly concluded that PCF-Appleton's prohibition against group prisoner grievances is reasonably related to its interest in maintaining safety, and security, within the facility. As such, the application of this regulation cannot provide the basis for the Plaintiff's Equal Protection claim.

Further, it is well-established that transfers within a prison, based upon security classifications, are exclusively within the discretion of BOP officials, as Congress has given Federal prison officials full discretion to control the conditions of prisoner confinement. See, Title 18 U.S.C. §4081; Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Peck v. Hoff, 660 F.2d 371, 373 (8th Cir. 1981). As a result, prison officials have discretion to implement legitimate penological interests in segregating individual inmates, from the general prison population, for non-punitive reasons in instances where, such as here, there is a threat to the safety and security of the institution. Brown-El v. Delo, 969 F.2d 644, 647 (8th Cir. 1992); Frazier v. Dubois, 922 F.2d 560, 562

(10th Cir. 1990). In such cases, a Federal prisoner does not have a substantive due process, equal protection, or any other constitutional or statutory right, to a particular custody or security classification. See, Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); United States v. Mauro, 436 U.S. 340, 359 (1978); Prows v. Federal Bureau of Prisons, 981 F.2d 466, 467 (10th Cir. 1992), cert. denied, 510 U.S. 830 (1993); United States v. Laughlin, 933 F.2d 786, 789 (9th Cir. 1991).

Here, the basis for the Plaintiff's constitutional equal protection claim arises from his assertion that the Defendants treated him differently than other inmates who had failed to strictly follow the procedures attendant to grieving prison conditions at PCF-Appleton, when they placed him in administrative segregation. However, the Plaintiff must show some deprivation of his constitutional rights, privileges, or immunities, to which he is entitled, before we may rule on prisoner status classifications and, as we have noted, under the governing law, the Plaintiff has no substantive due process, or equal protection right, to a particular custody classification within the Bureau of Prisons. United States v. Mauro, supra at 359; Moody v. Daggett, supra. Accordingly, finding no violation of the "equal protection guarantee imbedded in the Due Process Clause of the Fifth Amendment," Nguyen v. Immigration and Naturalization Service, --- U.S. ---, --- S.Ct. ---, 2001 WL 636204

at *3 (U.S., June 11, 2001), we recommend that Summary Judgment also be entered on the Plaintiff's equal protection claim.

In sum, finding no triable issues, and concluding that the Defendant's are entitled to Judgment as a matter of law on each of the claims alleged by the Plaintiff, we recommend that the Defendant's be granted Summary Judgment as to all of the claims contained in the Plaintiff's Complaint.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiff's Motions for the Fees Applied to CV #00-851 be Applied to CV #00-2324 [Docket Nos. 11 & 25] are DENIED.

AND, It is --

RECOMMENDED:

1. That the Plaintiff's Motion for Summary Judgment [Docket No. 15] be denied.

2. That the Defendants' Motion for Summary Judgment [Docket No. 8] be granted.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 9, 2001,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 9, 2001,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.